UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STEPHEN LOWELL DANIELS
and LORI LEE DANIELS,

Plaintiffs,

v.                                Civil Action No. 2:18-cv-00561

DIAMOND RESORTS FINANCIAL
SERVICES, INC.,

Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is defendant's motion to compel arbitration, filed May 18, 2018. Also pending is defendant's motion for oral argument on its motion to compel arbitration, filed May 25, 2018.

## I.   Background

On June 17, 2016 and November 27, 2016, plaintiffs Stephen Lowell Daniels and Lori Lee Daniels, both citizens of West Virginia, Not. Removal, ECF No. 1, at ¶ 7, entered into separate contractual agreements with defendant Diamond Resorts Financial Services, Inc. ("DRFS"), a Nevada corporation with its principal place of business in Nevada, id. at ¶ 8, for the "purchase and sale of certain property in the nature of a timeshare." Compl., ECF No. 1-1, at ¶¶ 3-4. The June 17, 2016

purchase agreement concerned the purchase of a timeshare in Virginia, and the November 27, 2016 purchase agreement concerned the purchase of a timeshare in Tennessee.  See ECF No. 7, Exs. A, B, at 1.

Plaintiffs initiated this action in the Circuit Court of Kanawha County, West Virginia on March 5, 2018.  Not. Removal, ECF No. 1, at ¶ 1.  The plaintiffs allege that after their attorney sent a formal demand letter to defendant, invoking the consumer protections of 15 U.S.C. § 1692c(a)(2)[1] and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101 et seq., defendant proceeded to call the plaintiffs forty-four times seeking to collect a debt.  Compl., ECF No. 1-1, at ¶¶ 7-8, 54-58.  The plaintiffs seek relief for unlawful debt collection under the governing state Act and request that "this Court cancel the debt owed to the Defendant or its principal pursuant" to the WVCCPA.  Id. at 7.

_____

[1] "Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."  15 U.S.C. 1692c(a)(2).

Not mentioned in the complaint is the fact that the purchase agreements were entered into with Diamond Resorts U.S. Collection Development, LLC ("Developer"), a Delaware limited liability company with its principal place of business in Nevada. See ECF No. 7, Exs. A, B, at 2. Developer is an indirect subsidiary of Diamond Resorts International, Inc. ("DRI"), a company with a network of more than 400 vacation destinations. Def.'s Mem. Supp. Mot. Compel Arbitration ("Def.'s Mem."), ECF No. 8, at 1-2. DRFS is also an indirect subsidiary of DRI and affiliate of Developer. Id. at 2.

Defendant removed this action to this court on April 12, 2018, pursuant to 28 U.S.C. § 1332. Not. Removal, ECF No. 1, at ¶ 5. Defendant subsequently moved to compel arbitration of this matter pursuant to the identical arbitration provisions set forth in the purchase agreements of June 17, 2016 and November 27, 2016. Def.'s Mem., ECF No. 8, at 2-3. According to the defendant, "arbitration is appropriate because a valid arbitration agreement exists and the issues in this case fall within its purview." Def.'s Mot., ECF No. 7, at 1.

The purchase agreements detail that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, will govern the arbitration provision and that Nevada law "shall govern to the extent that state law is relevant under the FAA in determining

the enforceability of this Arbitration Provision." ECF No. 7, Exs. A, B, at ¶ 18(e).

The arbitration provision includes three relevant subsections. First, the purchase agreements contain an opt-out provision that permits a purchaser to notify the seller within thirty days if the purchaser does not want the arbitration provision to apply by sending a letter to the seller "STATING THAT THE ARBITRATION PROVISION DOES NOT APPLY." Id. at ¶ 18(a).

Next, the arbitration provision states that "[u]nless Purchaser has exercised his or her opt-out right pursuant to Section 18(a), upon the election of Purchaser or any Company Party, any Claim between Purchaser and such Company Party shall be resolved by binding individual (and not class) arbitration." Id. at ¶ 18(c).

Finally, the arbitration provision defines several of the terms used in Paragraph 18(c). "Company Party" is defined as "Seller and/or the Association, their affiliates and the agents, representatives, members, employees, officers and/or directors of such entities, if and to the extent that any Claim is asserted by or against such entity or person." Id. ¶ 18(b). "'Claim' means any legal claim, dispute or controversy between any Company Party and Purchaser, including statutory, contract and tort disputes of all kinds and disputes involving requests

for declaratory relief, injunctions or other equitable relief."[2]
__Id.__

The plaintiffs have filed a response in opposition to
defendant's motion in which they object to the enforcement of
the arbitration provision on several grounds.  The defendant has
since filed its reply.

## II.  Standard of Review

The FAA was enacted in 1925 and codified as Title 9 of
the United States Code in 1947.  __Gilmer v. Interstate/Johnson__
__Lane Corp.__, 500 U.S. 20, 25 (1991).  Its purpose was to "reverse
the longstanding judicial hostility to arbitration agreements
... and to place [them on] the same footing as other contracts."
__Id.__  Additionally, the __Gilmer__ court noted:

> statutory claims may be the subject of an arbitration
> agreement, enforceable pursuant to the FAA . . . .  In
> these cases we recognized that "[b]y agreeing to
> arbitrate a statutory claim, a party does not forgo
> the substantive rights afforded by the statute; it
> only submits to their resolution in an arbitral,
> rather than a judicial, forum."

__Id.__ at 26 (quoting __Mitsubishi Motors Corp. v. Soler Chrysler-__
__Plymouth, Inc.__, 473 U.S. 614, 628 (1985)).  The FAA provides

---

[2] "'Claim' does not include any individual action brought by a
Purchaser in small claims court or an equivalent court, unless
such action is transferred, removed, or appealed to a different
court . . . ."  __Id.__

that arbitration clauses in contracts concerning interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 24 (1983). "Accordingly, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." **Adkins v. Labor Ready, Inc.**, 303 F.3d 496, 500 (4th Cir. 2002) (internal citations and quotations omitted). Thus, a district court must grant a motion to compel arbitration when "a valid arbitration agreement exists and the issues in a case fall within its purview." **Id.** (citing **United States v. Bankers Ins. Co.**, 245 F.3d 315, 319 (4th Cir. 2001)).

In this circuit, a party may compel arbitration under the FAA if it can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

**Id.** at 500-01 (quoting **Whiteside v. Teltech Corp.**, 940 F.2d 99, 102 (4th Cir. 1991)).

The _Adkins_ court also observed that "'even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.'" _Id._ at 501 (quoting _Arrants v. Buck_, 130 F.3d 636, 640 (4th Cir. 1997)). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." _Id._ at 501 (citing _First Options of Chicago, Inc. v. Kaplan_, 514 U.S. 938, 944 (1995)); _see also_ _Sydnor v. Conseco Fin. Servicing Corp._, 252 F.3d 302, 305 (4th Cir. 2001) (citation omitted). "Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. _Doctor's Assocs., Inc. v. Casarotto_, 517 U.S. 681, 687 (1996).

## III. Discussion

The plaintiffs object to the arbitration provision's enforcement in this matter on three different grounds. First, plaintiffs contend that DRFS may not sue to enforce the arbitration provision of the purchase agreements inasmuch as it is not a party to either of the purchase agreements. Pls.' Resp., ECF No. 10, at 1-2. Second, plaintiffs assert that they did not agree to arbitrate claims "arising from unlawful debt

collection" and that such claims are "outside the scope of the arbitration agreement." Id. at 3. Finally, plaintiffs argue that the arbitration provision is unenforceable because it is not mutually binding. Id. at 3-6.

A. DRFS may enforce the arbitration provision

Plaintiffs contend that DRFS is a third-party debt collector, "not within the scope of 'affiliated' timeshare companies for which the Plaintiff agreed to arbitrate claims or disputes with." Id. at 2. This argument is not persuasive.

The arbitration provision explicitly provides that a Company Party is the "Seller and/or the Association, their affiliates and the agents, representatives, members, employees, officers and/or directors of such entities, if and to the extent that any Claim is asserted by or against such entity or person," and that "any Claim between Purchaser and such Company Party shall be resolved by binding individual (and not class) arbitration." ECF No. 7, Exs. A, B., at ¶ 18(b)-(c).

Attached to its reply, the defendant provides the declaration of Mr. Benjamin La Luzerne, Esq., in-house counsel for DRI. ECF No. 11-1. Mr. La Luzerne states therein that DRFS is a subsidiary of DRI who is charged with collecting delinquent

maintenance fees owed by DRI timeshare owners. Id. at ¶¶ 3-4.
He also asserts that Developer is a subsidiary of DRI. Id. at ¶
5.

Black's Law Dictionary defines "affiliate" as "[a]
corporation that is related to another corporation by
shareholdings or other means of control; a subsidiary, parent,
or sibling corporation." Affiliate, Black's Law Dictionary
(10th ed. 2014).

Here, it is clear that DRFS is an affiliate of the
seller, Developer, and as such, claims between it and the
purchasers are to be resolved in binding arbitration.[3]

B. WVCCPA claim is covered under the arbitration provision

Contrary to plaintiffs' assertions, claims for
unlawful debt collection arising under 15 U.S.C. § 1692c(a)(2)
and the WVCCPA are not outside the scope of the arbitration
provision.

The arbitration provisions of both purchase
agreements, which were signed on separate occasions by the

---

[3] Inasmuch as the court has found that DRFS is an affiliate under
the terms of the arbitration provision, it does not address
plaintiff's argument that non-parties should not able to impose
a contractual agreement to arbitrate.

plaintiffs, specify that "any Claim between Purchaser and such Company Party shall be resolved by binding individual . . . arbitration."  ECF No. 7, Exs. A, B, ¶ 18(c).  Further, "'Claim' means any legal claim, dispute or controversy between any Company Party and Purchaser, including statutory, contract and tort disputes of all kinds."  Id. at ¶ 18(b).

The court considers this arbitration clause to be broad, as it does not limit arbitration to the contract, but rather "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute."  J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (In determining whether an arbitration clause was broad, the court noted that the difference in the phrases "in connection with" and "may arise out of or in relation to" was largely semantic.). Inasmuch as the court determines the scope of the arbitration clauses to be broad, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 25; see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 711 (4th Cir. 2001) ("[W]e may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute.") (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996)).

Here, there is a statutory dispute between a "Company Party" and the "Purchaser." The plain language of the arbitration provision indicates that allegedly unlawful debt collection claims, which apparently arose out of plaintiffs' failure to pay maintenance fees as required under the purchase agreements,[4] are covered under the arbitration provision.

## C. Enforceability of the arbitration provision

Finally, plaintiffs' contention that the arbitration provision is not enforceable, inasmuch as the defendant is not also compelled to arbitrate claims it may have against plaintiffs, lacks merit.

West Virginia's choice-of-law rules, which direct the court in determining which state's laws to apply in deciding the

---

[4] "Purchaser understands and agrees that in accordance with provisions of the Collection Instruments, the Association is empowered to levy and collect Assessments . . . for management and maintenance expenses." ECF No. 7, Exs. A, B, at ¶ 7(a).

enforceability of this arbitration provision, have been accurately summarized as follows:

> A federal district court sitting in diversity applies the choice-of-law rules of its forum state. <u>Wells v. Liddy</u>, 186 F.3d 505, 521 (4th Cir. 1999). West Virginia law provides that "the law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this State." <u>Gen. Elec. Co. v. Keyser</u>, 166 W.Va. 456, 275 S.E.2d 289, 292 (1981) (quoting <u>Mich. Nat'l Bank v. Mattingly</u>, 158 W.Va. 621, 212 S.E.2d 754, 755 (1975)). West Virginia law further provides that a choice-of-law provision "will be upheld unless the chosen state has no substantial relationship to the parties to the transaction or unless the application of the law of the chosen state would be contrary to the fundamental public policy of" this state. <u>Bryan v. Mass. Mut. Life Ins. Co.</u>, 178 W.Va. 773, 364 S.E.2d 786, 790 (1987).

<u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe</u>, 313 F. Supp. 2d 603, 609 (S.D.W. Va. 2004).

Here, it appears that the purchase agreements were signed while the plaintiffs were on vacation in Virginia and Tennessee, respectively. Def.'s Mem., ECF No. 8, at 2. However, the parties also specifically agreed, as a part of the purchase agreements, in two separate places that "this Agreement shall be exclusively governed by and construed in accordance with the laws of Nevada without regard to its choice of law rules," ECF No. 7, Exs. A, B, at ¶ 17, and "Nevada law shall govern to the extent that state law is relevant under the FAA in

determining the enforceability of this Arbitration Provision,"
id. at ¶ 18(e).

West Virginia upholds these choice of law provisions
"unless the chosen state has no substantial relationship to the
parties to the transaction." Bryan, 178 W.Va. at 777, 364
S.E.2d at 790 (citing Keyser, 166 W. Va. at 470, 275 S.E.2d at
297). Developer, the other party to the contract, has its
principal place of business in Nevada, although it is a Delaware
limited liability company. Further, DRFS, a party to this
litigation, and apparently the debt collection entity related to
Developer, is a Nevada corporation with its principal place of
business in Nevada. There is a substantial relationship between
those parties and Nevada, and there does not appear to be any
indication that the contract formation laws of Nevada are
contrary to the public policy of West Virginia.

The terms of the agreement also clearly and
unambiguously state Nevada law would apply to the extent that
state law is necessary to demonstrate the arbitration
provision's enforceability. See Coe, 313 F. Supp. 2d at 610
("By executing the relevant agreements, the state court
plaintiffs clearly indicated their assent to the terms of the
agreements. . . . The court accordingly finds that the state
court plaintiffs and [defendant] validly agreed to apply New

York law to the present dispute."). Plaintiffs do not assert
which state's laws should govern the enforceability of the
arbitration provision, and defendant asserts, without
explanation, that West Virginia's laws govern.[5] However, "[i]f
the parties did so agree, then the law of the chosen forum
governs all claims related to the rights and duties of the
parties' agreement." Coe, 313 F. Supp. 2d at 609 (citing
Restatement (Second) of Conflicts of Laws § 187 cmt. d).

Accordingly, the court looks to Nevada contract law to
determine whether the arbitration provision is enforceable.

Under Nevada law, "[b]asic contract principles
require, for an enforceable contract, an offer and acceptance,
meeting of the minds, and consideration." May v. Anderson, 119
P.3d 1254, 1257 (Nev. 2005). "[C]onsideration may be any
benefit conferred or any detriment suffered." Shydler v.
Shydler, 954 P.2d 37, 42 (Nev. 1998) (quoting Nyberg v. Kirby,
188 P.2d 1006, 1010 (Nev. 1948)). Courts in Nevada have found
that a mutual promise to be bound by the arbitration process
serves as adequate consideration. Thrash v. Towbin Motor Cars,

---

[5] The court notes that in supporting its claim that the
arbitration provision lacks mutuality, the plaintiffs do not
cite Nevada law, and instead rely on cases from the Court of
Appeals for the Fourth Circuit and California and Montana state
courts.

No. 2:13-cv-01216-MMD-CWH, 2013 WL 6210632, at *2 (D. Nev. Nov. 26, 2013) (citing <u>Circuit City Stores, Inc. v. Najd</u>, 294 F.3d 1104, 1108 (9th Cir. 2002) (interpreting California contract law)). Other courts have held similarly. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Circuit City Stores</u>, 148 F.3d 373, 378 (4th Cir. 1998) (finding that the arbitration agreement was supported by consideration when both parties agreed to be bound by the arbitration process).

As noted above, the arbitration provision explicitly states that "upon the election of Purchaser or any Company Party, any Claim between Purchaser and such Company Party shall be resolved by binding individual (and not class arbitration)." ECF No. 7, Exs. A, B, at ¶ 18(c). Apart from the small-claims exception in the arbitration provision, which allows only the <u>purchaser</u> to bring certain claims in small claims court, the arbitration provision is binding on both parties and all disputes between the parties are subject to arbitration, if one of the parties chooses to arbitrate. <u>See</u> <u>id.</u> at ¶ 18(a), (b). Plaintiffs, however, in an attempt to demonstrate that the arbitration provision is unilaterally binding on them, reference two aspects of the purchase agreements as well as one in the promissory notes that were signed in association with those purchase agreements. In support of their argument, set out next

below, plaintiffs cite <u>Noohi v. Toll Bros.</u>, 708 F.3d 599 (4th
Cir. 2013), a case interpreting Maryland law which invalidated
an arbitration agreement for lack of mutuality because it
unambiguously bound only one party to arbitration.  <u>Id.</u> at 611-
13.  While <u>Noohi</u> applies Maryland contract law, the principle it
propounds, that in order for an arbitration provision to be
enforceable it must mutually bind both parties, is a sound one
and is relevant here.

First, plaintiffs assert that inasmuch as the small-
claims exception contained in the arbitration provision permits
the defendant to compel arbitration if a claim brought in small
claims court "is transferred, removed, or appealed to a
different court," the ability of plaintiffs to avoid arbitration
is illusory.  Pls.' Resp., ECF No. 10, at 3.  This argument is
unpersuasive.  If the plaintiffs chose to bring an action in
small claims court, in order for the matter to be "transferred,
removed, or appealed," some aspect of the case, such as the
amount in controversy, must have changed in order to allow the
transfer or removal to another court.[6]  On direct appeal,
presumably the small claims exception would continue to apply.

---

[6] Other courts have specifically noted that the inclusion of
small claims carve-outs was "intended to benefit, not injure,
consumers."  <u>See</u> <u>Jenkins v. First Am. Cash Advance of Georgia,
LLC</u>, 400 F.3d 868, 879 (11th Cir. 2005).

The plaintiffs, of course, initiated this action in the Circuit
Court of Kanawha County, not small claims court. The plaintiffs
did not object to defendant's notice of removal which asserted
that the amount in controversy was more than $75,000.00. <u>See</u>
Not. Removal, ECF No. 1, at ¶¶ 9-17. This case does not involve
the small-claims exception.

Next, plaintiffs refer to the promissory notes
associated with the purchase agreements, which state:

> In the event that counsel is employed to collect all
> or any part of the indebtedness evidenced hereby,
> whether at maturity or following acceleration, to the
> extent permitted by law Maker agrees to pay Holder's
> reasonable attorneys' fees, whether <u>suit</u> be brought or
> not (including any fees associated with appeals or
> bankruptcy proceedings), and all other costs and
> expenses reasonably incurred in connection with
> Holder's collection efforts.

ECF No. 10, Exs. C, D, at 3, 7 (emphasis added). Plaintiffs
contend that the holder of this note, Developer, has a right to
sue, not just arbitrate. Indeed, either party may sue but that
does not mean the issues in dispute would not be resolved by
arbitration. The promissory notes, however, are not in issue in
this lawsuit. The plaintiffs initiated this action based on
debt collection calls made by DRFS in connection with the
purchase agreements which they explicitly mention and attach to
the complaint and which expressly provide for arbitration. <u>See</u>

Compl., ECF No. 1-1, at ¶¶ 3-4; see also ECF No. 1-1, Ex. A, at 8-16; ECF No. 1-1, Ex. B, at 17-27.

Finally, plaintiffs point to Paragraph 14(c), which is identical in both purchase agreements and pertains to the process by which Seller would pursue default against the Purchaser. Specifically, plaintiffs note that "Seller . . . may enforce the Seller Security Interest in accordance with Article 9 of the UCC . . . or pursue any other remedy available to Seller, at law or in equity . . . ." ECF No. 7, Exs. A, B, at ¶ 14(c). This subsection has no bearing on the arbitration provision. This sentence is part of the default clause, not the arbitration provision, and it merely states that the Seller may pursue whatever remedies are available, not the forum in which it may do so. Additionally, this portion of the purchase agreement would be applicable even if the purchaser did not exercise the thirty-day right to opt out of the arbitration provision.

As has been noted repeatedly, the arbitration provision in the purchase agreements states that when the purchaser has not opted out of the purchase agreements, if either party wishes to arbitrate, then "any Claim between Purchaser and such Company Party shall be resolved by binding individual (and not class) arbitration." Id. at ¶ 18(b). While

the arbitrator may make use of the clause in the "Default" section to determine what remedies are available, it is irrelevant to whether the arbitration provision is mutually binding.

Inasmuch as the plaintiffs have failed to demonstrate that the arbitration provision is not mutually binding, their suggestion that the provision is unconscionable is without merit.[7]  For the same reasons set forth above, the arbitration provision is not substantively unconscionable.  <u>See</u> <u>Ting v. AT&T</u>, 319 F.3d 1126, 1149 (9th Cir. 2003), <u>cert. denied</u>, 540 U.S. 811 (2003) ("Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'") (quoting <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 6 P.3d 669, 691-92 (Cal. 2000)).  Further, there is no procedural unconscionability – the opt-out clause in the arbitration provision is written in all capital letters and in bolded font, and it provides the purchasers with the opportunity to opt-out of the arbitration provision for thirty days after signing each agreement <u>without</u>

---

[7] The court notes that plaintiffs cite several California state cases in support of their contention that the arbitration provision lacks mutuality.  <u>See</u> Pls.' Resp., ECF No. 10, at 6. However, inasmuch as all those cases void arbitration clauses as unconscionable due to a lack of mutuality, they are not applicable here, where both parties are bound by the arbitration provision.

**affecting any other provisions in those agreements**.  See ECF No.
7, Exs. A, B, at ¶ 18(a); <u>D.R. Horton, Inc. v. Green</u>, 96 P.3d
1159, 1162 (Nev. 2004), <u>overruled on other grounds by</u> <u>U.S. Home</u>
<u>Corp. v. Michael Ballesteros Trust</u>, 415 P.3d 32 (Nev. 2018) ("A
clause is procedurally unconscionable when a party lacks a
meaningful opportunity to agree to the clause terms either
because of unequal bargaining power, as in an adhesion contract,
or because the clause and its effects are not readily
ascertainable upon a review of the contract.").

     For the foregoing reasons, the court finds the
arbitration provision to be enforceable.


     D. Claim is referable to arbitration


     The court now turns to the application of the elements
set forth in <u>Adkins</u> necessary for the court to compel
arbitration.

     In Sections III.A and III.B above, the court
indirectly evaluated whether there was "the existence of a
dispute between the parties" and "a written agreement that
includes an arbitration provision which purports to cover the
dispute."  <u>See</u> <u>Adkins</u>, 303 F.3d at 500-01.  There is a dispute
between DRFS and the plaintiffs, as evidenced by the allegations

in the complaint, and the WVCCPA claim made against DRFS is a covered claim under the arbitration provision. The first two elements of _Adkins_ are therefore established.

It is undisputed and the court likewise finds that the third element — that the agreement affects interstate commerce — is met because plaintiffs are West Virginia citizens who purchased timeshares in Virginia and Tennessee from Developer, who is a Delaware limited liability company with its principal place of business in Nevada.

Finally, the fourth element is satisfied inasmuch as plaintiffs have thus far refused to arbitrate this dispute, as evidenced by their opposition to DRFS's motion to compel arbitration.

Accordingly, the arbitration provision in the purchase agreements covers plaintiffs' claim and the court must compel arbitration.

E.  Dismissal of the action

DRFS contends that if the motion to compel arbitration is granted the case should be dismissed rather than stayed. Def.'s Mem., ECF No. 8, at 8-9.

The FAA states that a court satisfied that the claims of a suit are arbitrable "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. "Notwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." <u>Choice Hotels</u>, 252 F.3d at 709-10. A district court may, therefore, dismiss a case rather than merely stay it. <u>Greenville Hosp. Sys. v. Employee Welfare Benefit Plan</u>, 628 Fed. App'x 842, 845-46 (4th Cir. 2015).

In this case, because the sole claim brought jointly by both plaintiffs is subject to arbitration, and would properly be referred there, dismissal is warranted in lieu of a stay.

## IV.   Conclusion

For the foregoing reasons, it is ORDERED that defendant's motion to compel arbitration be, and it hereby is, granted and that this complaint is dismissed without prejudice to arbitration.  It is further ORDERED that defendant's motion for oral argument on the motion to compel arbitration be, and hereby is, denied as moot.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record.

ENTER: March 18, 2019

John T. Copenhaver, Jr.
Senior United States District Judge